UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re                                                    Case No. 23-72942-reg

      Patricia Murphy,

                                                               Chapter 13

               Debtor
-----------------------------------------------------------x

## MEMORANDUM DECISION

This matter is before the Court pursuant to a motion ("Motion") by Patricia Murphy (the "Debtor") seeking to enforce the automatic stay, to recover attorney's fees and costs and to assess punitive damages against the purchasers of the Debtor's residence and their counsel pursuant to 11 U.S.C. § 362(k). The Debtor's residence was sold at a foreclosure sale which was held prepetition and the purchasers, Jennifer and Phillip Hardial, commenced a landlord/tenant proceeding against the Debtor post-petition. The Court previously ruled that the Hardials and their counsel violated the automatic stay and the purpose of this Memorandum Decision is to fix the amount to award the Debtor.

The Hardials and their counsel oppose any punitive damages award and seek to have the amount of attorney's fees and costs significantly reduced from the amount sought by the Debtor. The Hardials also seek a credit or offset for unpaid post-petition use and occupancy of the property. For the reasons set forth below, the Court awards $1,4026.50 in attorney's fees and costs in favor of the Debtor and against the purchasers and their counsel, as joint and several obligations. The Debtor's request for punitive damages is denied. The Hardials' request for a credit or offset equal to the value of the use and occupancy of the property is granted. The credit,

which is not a claim in this bankruptcy case, is solely to offset the dollar amount of the sanctions awarded in this Memorandum Decision. An inquest to fix the amount owed by the Debtor shall be scheduled by the Court.

While the Bankruptcy Code sets forth certain consequences for willful violations of the automatic stay, a debtor must establish that they were actually injured by the party's conduct. In the instant case, the Debtor is entitled to recover a portion of the attorney's fees related to the conduct of the Hardials and their counsel that are found to have violated the stay, but only to the extent the fees are reasonable and necessary. The Court is charged with making this determination and should guard against excessive billing or overzealous lawyering. The legal fees related to the conduct of the Hardials and their counsel are not excessive and reflect an appropriate legal response by the Debtor's counsel. The Debtor's request for punitive damages is not warranted in this case. While it is appropriate to redress intentional violations of the stay, they must be tailored to the specific circumstances. In this case, there is no purpose in awarding punitive damages to deter future violations where the actors are not likely to engage in such activity again, nor do similar violations take place routinely.  Furthermore, there is no evidence of malice on the part of the Hardials or their counsel. As for damages based on emotional distress, there must be a clear causal nexus between the conduct and the distress, not just generalized allegations.

On one level this case presents the Court with a fairly routine issue of fixing the appropriate remedy for a violation of the automatic stay. The automatic stay is the bedrock of the relief a debtor seeks when filing for bankruptcy protection. This is true for the largest corporations or the individual seeking a fresh start. However, over the recent past, the Court has seen a dramatic increase in individuals filing multiple bankruptcy petitions with no intention of

utilizing the process for any purpose other than to frustrate and delay secured lenders and other creditors from pursuing their contractual rights. The law protects these debtors and creditors cannot disregard the automatic stay. This can be frustrating and may sometimes seems inequitable, but it is critical to the integrity of the system that this process is followed. How the Court determines the economic injury to a debtor for a violation of the stay must be viewed through the prism of the facts of each case. The law relied upon by the Debtor provides for the form of relief requested and it is the scope of that relief that the Court must decide. At the heart of the Court's objective is how to stay true to the law and at the same time balance the equities with respect to matters before the Court. However, in that pursuit of equity, bankruptcy courts are bound by the statutes and case law. Bankruptcy judges, as do all judges, come to their position with personal beliefs as to what may be a desired outcome in each particular matter. However, we must guard against allowing those beliefs from hindering our obligation to enforce the law as provided in the statutes. Clearly, judges can and do have a variety of views regarding how a particular statute should be read, but our responsibility is clear. The matter before the Court requires just such a nuanced analysis in applying the law while recognizing the equitable rights of the parties.

For the vast majority of chapter 13 cases, balancing the equities often requires the Court to temper the demands of the secured creditors in deference to a good faith debtor who seeks to remain in their home and repay their debts. However, where a debtor uses the system to prevent a creditor from exercising their legal rights without making an effort to comply with the requirements under the Bankruptcy Code, the Court must take this into consideration. The Debtor defaulted on the mortgage over sixteen years ago and lost her legal ownership interest in the property almost two years ago. The Debtor has embarked on a new course of action designed

to keep her in possession of the property. While the Debtor does have rights and creditors must abide by the law, the Court may consider the Debtor's conduct when fashioning a remedy for acts taken in violation of the automatic stay. In its analysis, it is equitable for the Court to look at the Debtor's conduct and award, when appropriate, recourse to a lender or aggrieved creditor. The Court will hold a hearing to determine the extent to which a credit may be given for the value of the Debtor's use and occupancy of the Property during this case.

*Facts*

The Debtor and her non-filing spouse purchased their residence located in Wantagh, New York ("Property") in 2006. By 2007, the Debtor and her spouse were in default under the mortgage encumbering the Property. Prepetition, on June 22, 2022, the Property was sold pursuant to a foreclosure sale. The Debtor filed a petition for relief under Chapter 13 on August 11, 2023 (the "Petition Date"). On September 27, 2023, the referee's deed was delivered to the Hardials. On that same date, the Hardials advised the Debtor's son and daughter that they had purchased the Property. That evening, the Debtor's non-filing spouse advised the Hardials of the pending bankruptcy. On October 12, 2023, the Hardials arranged for the service of a 10-day notice to quit upon the Debtor at the Property, where the Debtor and her family continued to reside. On October 16, 2023, counsel to the Debtor wrote a letter to Ms. Drysdale, counsel to the Hardials, advising her of the Debtor's pending bankruptcy case. On October 30, 2023, the Hardials filed a petition in State Court seeking a warrant of eviction, and a hearing was scheduled for November 29, 2023. On November 17, 2023, counsel to the Debtor filed a suggestion of bankruptcy in the landlord/tenant proceeding. On November 21, 2023, counsel to the Debtor wrote another letter to Ms. Drysdale regarding the Debtor's bankruptcy. On November 29, 2023, Ms. Drysdale appeared at the hearing before the landlord/tenant court,

along with the Debtor. The Debtor advised the court of the pending bankruptcy, and the matter was adjourned to January 4, 2024.

On December 12, 2023, counsel for the Debtor contacted Ms. Drysdale and advised her of the automatic stay again. On December 19, 2023, the Debtor filed the Motion. The first hearing on the Motion took place on March 20, 2024 and was adjourned.  At a hearing held on April 17, 2024, the Court found that the Hardials and Ms. Drysdale willfully violated the automatic stay by continuing with the landlord/tenant action after being advised of the Debtor's bankruptcy. Based on this ruling, the Hardials consented to withdraw the pending landlord/tenant action. The Court directed counsel to the Debtor and counsel to the Hardials and Ms. Drysdale to confer and submit a consent order regarding an appropriate award of sanctions in favor of the Debtor. In the event the parties could not reach an agreement, counsel to the Debtor could submit additional papers regarding an award of sanctions and counsel to the Hardials and Ms. Drysdale could file a response. The Court also granted a motion by the Hardials to vacate the stay to permit them to proceed against the Debtor in landlord/tenant court. On May 6, 2024, counsel to the Debtor filed an affirmation in support of a sanctions request in the amount of $16,277.50 in fees and an award of punitive damages in an unspecified amount. The time records annexed to the Debtor's affirmation reflect that the charges are largely limited to work related to the conduct of the Hardialas and Ms. Drysdale. On May 11, 2024, counsel to the Hardials and Ms. Drysdale filed a response to the Debtor's request, asserting, among other things, that the request should be reduced to ¼ of the amount sought because ¾ of the fees were incurred in connection with the conduct of the mortgagee. The Hardials also seek to offset any assessment against them with the value of use and occupancy of the Property which has accrued post-petition.  Thereafter, the matter was marked submitted.

*Discussion*

The Court held several hearings and determined that the Hardials and Ms. Drysdale violated the automatic stay when they refused to withdraw or seek to stay the landlord/tenant proceeding. The Court further directed the parties to submit a proposed order on consent regarding an appropriate award to redress the violations of the stay and if they could not, then each party could file additional submissions with the Court in support of their position. No agreement was reached and both sides submitted additional papers. The Debtor seeks $16,277.50 in fees and an award of punitive damages in an unspecified amount. According to the Debtor, an award of punitive damages is warranted to deter the Hardials and Ms. Drysdale from similar conduct in the future. Counsel to the Hardials and Ms. Drysdale argue that at least ¾ of the legal fees sought were incurred in connection with the mortgagee's conduct related to the foreclosure sale and the issuance of the referee's deed. Therefore, the amount awarded should not exceed $4,069.38. They also seek a credit/offset for the Hardials' failure to pay rent to the Hardials during the pendency of this case.

Upon the filing of a petition for relief under the Bankruptcy Code, the automatic stay applies to actions and proceedings against the debtor and the debtor's property to recover prepetition claims. 11 U.S.C. § 362(a). This protection remains in place unless the court grants relief from the stay, there is a specific statutory carve out, or the property is exempt. *Yarinsky v. Saratoga Springs Plastic Surgery, PC* (*In re Saratoga Springs Plastic Surgery, PC*), No. 1:03CV896, 2005 WL 357207 *3 (N.D.N.Y. Feb. 11, 2006), *aff'd*, 172 Fed. Appx. 339 (2d Cir. 2006). The Court already determined that the Hardials and Ms. Drysdale violated the automatic stay with respect to the Debtor's possessory interest in the Property and that the violation was

willful. The purpose of this Memorandum Decision is to fix the amount of damages to award the Debtor as required by the Bankrupty Code.

11 U.S.C. § 362(k)(1), which is the operative statute, provides in relevant part:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

Actual damages may include compensation for emotional distress as well as legal fees and expenses. While the Debtor alleges that the conduct of the Hardials and Ms. Drysdale caused her to experience emotional distress, the Debtor does not seek specific compensation for such emotional distress. To maintain a damage claim for emotional distress, the debtor must establish "'a close causal connection between the harm and the stay/discharge violation.'" *In re Haemmerle*, 529 B.R. 17, 30 (Bankr. E.D.N.Y. 2015) (citing *In re McCool*, 446 B.R. 819, 824 (Bankr. N.D. Ohio 2010) (other citations omitted)). The record does not establish that the specified conduct caused any condition of the Debtor to worsen. A generalized assertion of stress will not suffice and therefore there is no basis to award compensation for allegations of emotional distress.

The Debtor does seek to recover legal fees and expenses incurred in connection with the conduct of the Hardials and Ms. Drysdale. With respect to the request for reimbursement of attorney's fees and costs, the Court has an obligation to determine whether the request is warranted considering the surrounding circumstances. As set forth by former Chief Judge Carla E. Craig in *In re Leiba*:

> Attorneys' fees and costs recoverable under § 362(k) must be reasonable and necessary. *In re Robinson,* 228 B.R. at 85. "The policy of section 362(k), to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite

> fee litigation." *Id.* (citing *Putnam v. Rymes Heating Oils, Inc. (In re Putnam),* 167 B.R. 737, 741 (Bankr.D.N.H.1994)). It is well established that "[r]easonable and necessary fees do not include unnecessary litigation costs." *In re Robinson,* 228 B.R. at 85; *see also Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC),* No. 1:03CV896, 2005 WL 357207, at *5 n. 4 (N.D.N.Y. Feb. 11, 2005), *aff'd,* 172 Fed.Appx. 339 (2d Cir.2006) ("[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against.").

*In re Leiba*, 529 B.R. 501, 507 (Bankr. E.D.N.Y. 2015).

In this case, the Debtor filed a single motion seeking damages based on conduct by the Hardials and their counsel as well as conduct by the mortgagee and its counsel. Based on the time sheets submitted, it appears that of the $16,277.50 sought, approximately $2,251.00 can be attributed to drafting a motion which addressed, in part, the conduct of the mortgagee and must be excised from the request. This leaves $14,026.50 as potentially compensable. The hourly rate in the amount of $425 is reasonable and consistent with the hourly rates of attorneys in this District for this type of work.

      The legal work performed by the Debtor's counsel was necessary to address the violations. While the Hardials and their counsel had the opportunity to withdraw the landlord/tenant proceeding when the Debtor filed the suggestion of bankruptcy in the proceeding on November 17, 2023, thereby sparing the Debtor of seeking relief in this Court, they failed to do so and the hearing scheduled for November 29, 2023 was held. At the hearing, the Hardials had another chance to withdraw the landlord tenant proceeding but instead the matter was adjourned to a later date. The Debtor was constrained to file the Motion and the additional hearings before the Court were required in order to determine whether the conduct of the Hardials and their counsel actually violated the automatic stay. The time spent by counsel to the

Debtor was reasonable as is the hourly rate charged by counsel. Therefore, fees and costs in the amount of $14,026.50 shall be awarded in favor of the Debtor and against the Hardials and Ms. Drysdale, who shall be liable jointly and severally.

An additional award of punitive damages may be warranted if there are additional findings of maliciousness or bad faith. *In re Robinson*, 228 B.R. 75, 80 (Bankr. E.D.N.Y. 1998) (citing *Crysen/Montenay Energy Co. v. Esselen Associates, Inc*. (*In re Crysen/Montenay Energy Co*.), 902 F.2d 1098, 1105 (2d Cir. 1990)). Other courts have awarded punitive damages to deter similar conduct by the creditor and others in the future. *In re Hammaerle*, 529 B.R. at 30.  In this case, the Hardials and their counsel did not act out of malice, but out of a misunderstanding of the automatic stay and whether it applied to their conduct.  For deterrence purposes, it does not appear that further sanctioning the Hardials and Ms. Drysdale would serve this purpose. The Hardials are not institutional lenders and are therefore not likely to repeat this conduct. It also does not appear that assessing punitive damages in this instance is required to deter others from engaging in similar conduct.

The Hardials seek a credit or offset against the damages award based on the use and occupancy allegedly owed by the Debtor.  The Court is aware that some debtors are utilizing statutes designed to protect good faith debtors seeking a fresh start as tools to frustrate legitimate creditors from exercising their rights. Whether it is a large corporation utilizing the Bankruptcy Code to keep a creditor from collecting on a judgment or an individual debtor seeking to preclude a secured creditor from proceeding to recover its property, the Bankruptcy Courts must take into consideration the rights of all parties. Courts need to diligently process these matters and not permit endless delay tactics. At the same time, Courts must vigilantly protect debtors from abusive practices designed to take advantage of debtors with limited resources. As

highlighted in this case, it is a careful balancing act that relies on the expertise of the judges and lawyers who work daily with these issues.

It is telling that the Debtor's schedules do not reflect an expense for housing.  A typical Chapter 13 debtor files to save their home from foreclosure and will cure the mortgage arrears in a plan, plus make a distribution to unsecured creditors. The Debtor in this case lists no housing expense and confirmed a plan paying unsecured creditors five percent over five years. After making no payments for housing since some time in 2006, it is appropriate to grant a credit to the Hardials for the forced use of their property post-petition. The Debtor has not provided a basis for concluding that she could live on the Property for free. While the Debtor has reaped the advantages of the automatic stay, it is equitable to permit a credit for the Debtor's use of the Property post-petition.  This credit is not a claim in the bankruptcy case and can only be used to reduce the amount of the damages awarded in this Memorandum Decision. The Court shall schedule a hearing to determine the dollar amount of this credit. Until the amount of the credit is determined, the Debtor may not collect the sanctions award.

*Conclusion*

For the reasons set forth in this Memorandum Decision, the Court awards fees and costs to the Debtor in the amount of $14,026.50, payable by the Hardials and Ms. Drysdale as joint and several obligations. The Court shall schedule a hearing to determine the dollar amount of the

credit which may be asserted to reduce the sanctions awarded in favor of the Debtor. Until the amount of the credit is determined, the Debtor may not collect the sanctions awarded to her.

The Court shall enter an order consistent with this Memorandum Decision.



Dated: Central Islip, New York
June 17, 2024

Robert E. Grossman
United States Bankruptcy Judge